:

'

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES TODD GULLEY,

Case No. 6:15-cv-01693-HZ

Petitioner,

OPINION AND ORDER

v.

JEFF PREMO,

Respondent.

Anthony D. Bornstein
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

Attorneys for Respondent

1 - OPINION AND ORDER

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court sexual abuse convictions from 2009. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) should be denied.

## BACKGROUND

Petitioner sexually abused his two daughters, JG and SG, approximately between the years of 1995 and 2004. Sometime between 1996 and 1999, when JG and SG were still under the age of 13, they informed their mother, Annette, about the abuse. Annette did not report the abuse to authorities, but instead participated in a family meeting where she, petitioner, and their daughters agreed that they would not report the abuse to authorities. Annette's parents also dissuaded the girls from reporting the abuse.

Petitioner stopped abusing SG, but continued to abuse JG until she attempted to commit suicide in 2003 at the age of 15. In 2009, at the age of 20, JG had become estranged from her family and decided to report the abuse. On May 22, 2009, she disclosed the abuse to Officer Grady Nelson of the Hubbard Police Department. Officer Nelson asked JG to make a recorded phone call to petitioner wherein he admitted abusing both JG and SG. Officer Nelson also interviewed SG who, although reluctant to speak out against petitioner, advised Nelson that petitioner had sexually abused her. Respondent's Exhibit 116, p. 17. SG also disclosed the abuse to an investigator for the Marion County District Attorney's Office, telling her that petitioner began

2 - OPINION AND ORDER

abusing her when she was six or seven years old. Respondent's Exhibit 118, p. 2. She did not, however, wish to see her father prosecuted.

The Marion County Grand Jury charged petitioner with seven counts of Sexual Abuse in the First Degree and Two Counts of Sodomy in the First Degree. Respondent's Exhibit 103. On October 1, 2009, the State notified petitioner and the trial court of its intention to rely on enhancement facts and to seek consecutive sentences. Respondent's Exhibit 115.

Petitioner participated in a psychosexual evaluation wherein he admitted to sexually abusing SG and JG for a period of years ending no later than 2001. Respondent's Exhibit 122, p. 4. He claimed that he abused the girls on a weekly basis. Id at 3. He also stated that he may have abused two other minor girls who were not the subject of the Indictment. Id at 4.

The parties entered into plea negotiations culminating in petitioner's January 3, 2010 plea petition wherein he admitted abusing JG and SG between 1996 and 1999, and agreed to: (1) plead guilty to five counts of Sexual Abuse in the First Degree; and (2) serve a minimum sentence of 100 months while acknowledging that the State would make a 300-month sentencing recommendation. Respondent's Exhibit 104. Petitioner entered his guilty pleas, and the trial court imposed a 225-month sentence. Respondent's Exhibit 105, pp. 34-35.

Petitioner did not take a direct appeal, and instead proceeded to file for post-conviction relief ("PCR") in Marion County where he asserted that trial counsel had been ineffective

3 - OPINION AND ORDER

for failing to adequately explain the possibility of a statute of limitations defense resulting in a guilty plea that was not knowing and voluntary. Respondent's Exhibit 107. The PCR court denied relief finding, in part, that petitioner had not established prejudice. Respondent's Exhibit 126. Petitioner appealed that decision, and the State moved for summary affirmance on the basis that petitioner failed to challenge the PCR court's finding of no prejudice, and alternatively argued that any challenge to the prejudice determination would not have succeeded. The Oregon Court of Appeals granted the State's motion for summary affirmance because petitioner did not assign error to the PCR court's findings regarding prejudice, or otherwise argue that the findings were not supported by evidence in the record. Respondent's Exhibit 130. The Oregon Court of Appeals denied petitioner's subsequent motion for reconsideration, and the Oregon Supreme Court denied review. Respondent's Exhibits 132, 134.

Petitioner filed this federal habeas corpus action on September 4, 2015. In his Petition, petitioner raises the following grounds for relief:

> 1. The trial court violated petitioner's right to due process by accepting a plea that was not knowing, intelligent, and voluntary, thereby resulting in an invalid conviction; and
>
> 2. Trial counsel was constitutionally ineffective when he: (a) erroneously advised petitioner to accept the State's plea offer; (b) failed to adequately and accurately explain the possibility of a statute of limitations defense; (c) failed to ensure

4 - OPINION AND ORDER

> that petitioner's plea was voluntary; and
> (d) erroneously represented to the court that
> the plea was voluntary.

Petition for Writ of Habeas Corpus (#2), Exhibit B.

Respondent asks the court to deny relief on the Petition because petitioner failed to fairly present all of his claims to Oregon's state courts, and if petitioner fairly presented Ground 2(b), the state-court decisions denying relief are correct and entitled to deference.

## DISCUSSION

### I.  Exhaustion and Procedural Default

A petitioner seeking habeas relief must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254.  *Rose v. Lundy*, 455 U.S. 509, 519 (1982).  A petitioner must also present his claims in a procedural context in which its merits can be considered. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In this case, it is clear from petitioner's state-court proceedings that he did not fairly present his Ground One due process claim to Oregon's state courts.  Specifically, in his Appellant's Brief, petitioner asserted only that his attorney was ineffective for advising him that no statute of limitations

5 - OPINION AND ORDER

argument was possible, resulting in an involuntary guilty plea. Respondent's Exhibit 127, p. 6. He limited his Petition for Review in the Oregon Supreme Court to the same claim. Respondent's Exhibit 133. Accordingly, the due process claim in Ground One is procedurally defaulted, and petitioner makes no argument to excuse the default.

With respect to Ground Two, respondent asserts that when the Oregon Court of Appeals granted summary affirmance based upon petitioner's failure to challenge the prejudice findings of the PCR court, it denied relief on a state law ground that is independent of the federal question and adequate to support the judgment. Because petitioner's Ground Two claims lack merit, the court need not resolve the issues of fair presentation and procedural default. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

## II. **The Merits**

### A. **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed

correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## B. **Analysis**

According to petitioner, he had a viable statute of limitations defense, and trial counsel failed to properly advise him as to that defense such that his resulting plea was not knowing and voluntary. Because no Supreme Court precedent is

7 - OPINION AND ORDER

directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

The statute of limitations for sex offenses is 12 years from the earlier of either the victim's 18th birthday or the date the crimes are reported to a law enforcement agency of the Department

8 - OPINION AND ORDER

of Human Services ("DHS"). ORS 131.125. However, until January
1, 2006, the statute of limitations was only six years. 2005 Or.
Laws Ch. 839. As a result, if the six-year statute of
limitations began to run before January 1, 2000, then it expired
prior to the time the law changed.

In his PCR proceeding, petitioner alleged that his trial
attorney advised him that he had no statute of limitations
defense. Specifically, he argued that his wife, Annette, worked
for the Oregon Youth Authority at the time the victims made their
disclosure of sexual abuse to her, and that such employees had an
obligation to report child abuse. *See* ORS 419B.010 and ORS
419B.050. He claimed that the girls told their mother about the
sexual abuse in the summer of 1999, thus the six-year statute of
limitations had already expired at the time of his indictment in
2009.

Trial counsel submitted an Affidavit for the PCR court's
consideration wherein he explained that he was "intimately aware
of the several revisions that have been made to the statute of
limitations in sexual offenses since 1989." Respondent's Exhibit
114, p. 1. With respect to petitioner's case, he stated:

> Before Gulley accepted the plea deal, we
> discussed potential defenses that he had to
> the charges, including a potential statute of
> limitations defense. I discussed each
> potential defense with Gulley. With regard
> to the statute of limitations defense, I
> explained both the six-year and twelve-year
> statutes of limitations, and how the statute
> of limitations had changed over time. I
> shared with Gulley my professional opinion
> that the six-year statute of limitations did
> not apply to his case. I never believed

9 - OPINION AND ORDER

> that the girls' report to their mother,
> Annette Gulley, constituted a report to a
> governmental agency that triggered the six
> year statute of limitations. Even it if did,
> the indictment alleged time frames of
> incidences beyond this date. Additionally,
> [JG] claimed in her May 22, 2009 initial
> disclosure to the police, and her follow-up
> interview on May 24, 2009, that the abuse
> continued until she tried to commit suicide
> on December 1, 2003.   These incidences were
> never reported to her mother or any other law
> enforcement    agency    or    conceivable
> governmental agency or DHS.   Granted, the
> alleged touches of [JG] after the disclosure
> to mom were over clothes, however, these
> touches, under the circumstances, constitute
> Sexual Abuse in the First Degree, in my
> opinion, (at least up until [JG]'s fourteenth
> birthdate . . .) under Oregon law.
>
> I ultimately concluded that Gulley had no
> valid statute of limitations defense to the
> charges, and I told him as much. I also told
> him there was no motion to dismiss that we
> could file on the basis of the statute of
> limitations.    Gulley understood that by
> taking the plea deal, he would waive his
> right to any defenses to the charges.

*Id* at 2-3.

The PCR court held an evidentiary hearing in the case, and ultimately resolved the issue as follows:

> The sole issue in this case is whether
> petitioner's plea was knowing and voluntary
> in that [his] attorney could have litigated a
> statute of limitations motion which could
> have resulted in some of the charges being
> dismissed.
>
> This court believes that the attorney fully
> discussed the motion with pet and that pet
> accepted the advi[c]e that the motion would
> not leave pet in any better place than the
> plea and the plea carried less risk than
> trial.    This was a reasonable strategy

10 - OPINION AND ORDER

decision based on the risk of litigati[ng] the motion and proceeding to trial.

The motion was not as clear cut as pet argues. The weaknesses of the motion are the following:

1.   Both girls reported the abuse to their mother in 1996-1999. Mother never disclosed to the police. Mother began working for OYA in 1997, so was a mandatory reporte[r] after that time.   If the girls told her any time prior to her employment, it would not trigger the statute of limitations.

2.   Clearly the legislature did not intend that a parent who was a mandatory reporter could decide not to report and thereby start the time limit rolling.   A court could well have found that the girls reported to their MOTHER, not a neutral party and mother responded as a wife, not in any official capacity.   She conspired with pet to hide the crimes.

3.   The report to mother by S was of pet touching "inappropriate places".   J reported touching of her vagina and breasts. Children did not disclose any other details of what places [petitioner] touched and didn't disclose that it happened to each of them many times.   A court could easily find that the reports were too general and that there were many more incidents than indicted. There was never any mention of oral sex until 2009.

4.   S. unclear if touched when she was age 6-10 or 8-12.

5.   J would testify that she was abused after the disclosure, so not subject to the motion.

6.   In a motion that is based on dates, all of the dates are uncertain.

7.   Law in this area changed several times during period of charges and lack of specificity by girls leaves the argument of

which law applied at various times and that
the statute did not run.

Trial on this case would have been risky.

8.   If pet won the motion entirely, he was
still facing two Sodomy 1 counts, which would
easily have gotten him 200 months if
convicted.   The DA would have asked for
departures.   The plea got him 225.   Trial
attorney would have been rightly concerned
about keeping out testimony about the years
of abuse of both girls which pet had
admitted, testimony that the sodomy charges
came to light after this child attempted
suicide, that the child had reported years
earlier to her mother but been ignored and
placed back in the home with the pet and
pressured by her extended family not to tell.
Defending on the failure to report would
therefore have been problematic.   Having pet
testify would have been dangerous for many of
the same reasons.   Character witnesses would
have been asked if they knew of pet's
admissions to abusing both girls.

9.   If pet lost the motion on any of the
counts, he stood to lose at trial.   S didn't
want him convicted and had forgiven him, but
she had clearly reported years of abuse.   If
convicted of any counts concerning S,
consecutive sentences were a real risk since
there were two victims.

10.   Pet made admissions and there was a
taped pretext call.

11.   Attorney would have been reluctant to
call Mother.   She would have gotten little
sympathy from a jury and she clearly believed
the reports but wanted it handled inside the
family.

12.   The DA had already filed notice of
enhancement factors.

This court finds the plea was knowing and
voluntary and that the attorney recognized
the statute of limitations issue[], and
advised pet on the risks of plea versus

12 - OPINION AND ORDER

> trial. Pet knew he was waiving that motion
> if he pled guilty and he decided to take a
> known sentence instead of the risk.
> Attorney's advice was reasonable under the
> circumstances. This court finds no inadequacy
> in the representation and no prejudice in any
> respect pled.

Respondent's Exhibit 126, pp. 4-5.

As in his PCR proceeding, petitioner argues here that the girls' disclosure to Annette triggered the statute of limitations because, as an employee of the Oregon Youth Authority, she was a mandatory reporter of sexual abuse. He therefore reasons that the statute of limitations defense was viable as to all charges as to SG, and half of the charges pertaining to JG, such that any success on statute of limitations grounds would have substantially altered his prospects at trial.

JG and SG disclosed the sexual abuse to Annette at home, in a bathroom with the door locked, as their father was trying to get in. Respondent's Exhibit 116, p. 9. Although petitioner denied abusing the girls in the immediate aftermath of the girls' disclosure, Annette and petitioner ultimately acknowledged the abuse but pressured SG and JG to maintain its secrecy within the family so as to avoid any legal consequences for petitioner. Although a disclosure of child abuse to a person with a duty to report such abuse typically triggers the statute of limitations, *State v. Walker,* 192 Or. App. 535 (2004), the unique facts underlying the disclosure in this case cast significant doubt upon petitioner's characterization of the disclosure as a report of abuse to a duty-bound governmental employee. As the PCR court found, it is difficult to see how the statute of limitations

13 - OPINION AND ORDER

•

would be triggered by a young child telling her mother of sexual abuse, only to have the statute of limitations expire because the mother helped her husband shield the abuse from disclosure outside of the family. In this regard, counsel's performance did not fall below an objective standard of reasonableness when he advised petitioner that the statute of limitations argument was not likely to succeed.

Not only was petitioner unlikely to succeed on the statute of limitations defense given the unique facts of this case, but even assuming he had prevailed, the statute of limitations argument would not have affected the two Sodomy I charges in the indictment because they came to light well after the victims' initial disclosure to Annette. As the PCR court noted, these two charges would have easily netted petitioner a 200-month sentence. The State also might have elected to bring additional charges with respect to any offense that the girls had not specifically reported to Annette. *See State v. Hutchinson*, 176 Or. App. 363, 368 (2001).[1] Given the substantial evidence petitioner faced, he cannot demonstrate that but for any erroneous advice on the statute of limitations issue, he would have foregone the plea offer and insisted on proceeding to trial. For all of these reasons, the PCR court's well-reasoned decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

///

---

[1] It is worth noting that had petitioner proceeded to trial under statute of limitations theory and lost on such a motion, he risked receiving a prison sentence of more than 700 months.

14 - OPINION AND ORDER

## III. **Evidentiary Hearing**

Finally, petitioner makes an alternative request for an evidentiary hearing to allow him to rebut the PCR court's finding that Annette conspired with petitioner to hide the abuse. Petitioner is not entitled to an evidentiary hearing in federal court unless he diligently attempted to develop his evidence in state court, but was unable to do so. *Williams v. Taylor*, 529 U.S. 420, 433-438, (2000). If petitioner failed to diligently develop the evidence in state court, an evidentiary hearing is permitted only if petitioner's claim relies on: 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i) and (ii). In addition, the facts underlying the claim must be sufficient to establish by clear and convincing evidence, that no reasonable factfinder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254 (e)(2)(B).

Petitioner reasons that he is not at fault for failing to introduce evidence during his PCR hearing on the conspiracy between Annette and himself because the PCR court issued that finding only after his PCR evidentiary hearing. It is clear from the record that Annette's failure to disclose the abuse to authorities was evident years before petitioner was even indicted. Petitioner, Annette, and Annette's parents pressured SG and JG to keep the abuse a secret, and this was a central

15 - OPINION AND ORDER

issue to the statute of limitations defense he discussed with trial counsel. Petitioner therefore cannot claim that he had no opportunity to demonstrate that Annette was not part of any conspiracy to hide the abusive behavior. Accordingly, an evidentiary hearing is not appropriate.

## CONCLUSION

For the reasons identified above, petitioner's request for an evidentiary hearing and his Petition for Writ of Habeas Corpus (#2) are denied. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this **31** day of January, 2017.

Marco Hernandez
Marco A. Hernandez
United States District Judge